22-4008 Owners Insurance Company v. Greenhalgh Planning & Development. Thank you, Your Honor, and may it please the Court. I'm Spencer Brown. I represent Owners Insurance Company. The District Court erred when it found that Owners has a duty to defend allegations against Greenhalgh do not constitute an occurrence under the insurance policy at issue because the only property damage alleged against Greenhalgh, which is loss of use of a barn because it fails to meet fire code and thus is legally uninhabitable, were the natural and probable consequences of Greenhalgh's failure to perform its work in conformance with that code. Because the complaint's allegations do not make out an occurrence, they do not trigger a duty to defend. But even if there is an occurrence, there's no duty to defend for a second reason, and that is because there are two policy exclusions that apply in this case to preclude coverage. Counsel, to agree with you, don't we have to make inferences about the scope of Greenhalgh's work here that aren't permissible at this stage? I don't think you do, Your Honor, and to demonstrate that, I think it's useful to look to the complaint and to what it alleges because although the allegations are somewhat sparse, I think that there's enough in the direct allegations of the complaint to demonstrate the scope of Greenhalgh's work or to demonstrate at least that scope is not an occurrence. The Pickens complaint, the one directly against Greenhalgh, alleges that Greenhalgh remodeled the house and barn. It alleges that it added living quarters to the barn and hired various subcontractors to do some work, although we don't know what work the subcontractors did. We also don't know what living quarters means. We don't know what living quarters means, that's correct, but the complaint, it doesn't include any allegation that the living quarters were separate from the remainder of the barn, doesn't include any allegation delineating between the living quarters and the rest of the barn. In fact, in the Cowley complaint, the Cowleys refer to the barn as an apartment as a whole, so we don't know if the living quarters were the entire barn, but what we do know is that Greenhalgh was hired to do its work to conform with code, and then in order to make these living quarters habitable, they had to install fire sprinklers, at least according to the allegations. We also know that Greenhalgh allegedly breached its contract and allegedly worked in a non-workmanlike matter specifically because it failed to meet code. It failed to install those fire sprinklers that were necessary for habitation, so whether the living quarters were a corner of the barn or the entire barn, if fire sprinklers were necessary to meet code for those living quarters to be habitable, Greenhalgh failed to do that. But the complaint doesn't say living quarters to be habitable. No, it says for the barn to be habitable. It just says living quarters. I mean, I guess where I'm stuck is trying to understand how we can proceed to agree with you if these kinds of factual questions are presented in the case. Your Honor, I think again that it's enough that we know that the allegation is that there's loss of use because there's loss of habitability of the barn, and then the way that the barn is not habitable is because it fails to meet code, and the allegation is that Greenhalgh's construction was required to meet code. The allegation of a breach is that Greenhalgh didn't meet code. If the fire sprinklers were required just in the living quarters, whatever they were, or if they were required throughout the barn to meet code and to make the living quarters of the barn or to make the barn in general habitable, Greenhalgh didn't do that. If we turn from there to look at what constitutes an occurrence, an occurrence under the policy is an accident, and Utah law tells us what to do with that word accident. Utah law tells us that damage is not accidental if it is the result of the natural and probable consequence of the insured's act or should have been expected by the insured. This is the exact case where the damage, the loss of use, is the natural and probable consequence of the insured's act. Greenhalgh failed to build the code. They failed to install fire sprinklers, and as a result, this building is legally not habitable. There's no physical property damage. There's no damage to carpet from a leaking water system or damage to drywall, anything else like that. The only issue here is Greenhalgh didn't comply with code. As a result, the building is not code compliant and not legally habitable. This court's Amsco-Windows case, the Cincinnati Insurance v. Amsco-Windows case is instructive on that. In that case, that case instructs us to look at what would probably happen rather than what could be foreseeable. Here, what would probably happen if a contractor fails to meet code is that the building is not up to code. There's a direct nexus between the two. Amsco also tells us to consider whether the damage is the direct product of negligent conduct or whether it's one or more steps removed. In that case, you had damage to other parts of the houses at issue there that were the result of Amsco's allegedly negligent manufacturing process. There were several steps between the ultimate damage and between Amsco's negligent conduct where the court determined that Amsco's defective windows were not the natural or that the damage to the houses was not the natural and probable consequence of Amsco's windows. That's because Amsco sold these windows through a wholesaler. They were installed by a different contractor. We have, of course, weather and other issues. Then the resultant damage was framing damage to wallboard, damage to carpet, things like that. We don't have that in this case. What we have here is Greenhalgh didn't build the code and the resultant damage is loss of use of the building because it does not comply with code. The living quarters here are legally uninhabitable. If the contractor, maybe this comes back to your window case, but let's say the contractor here failed to install windows in the living quarters. Clearly, that's not code. Nonetheless, there was a snowstorm that caused damage to the interior of the premises with those damages to the carpet. Would those be covered in my hypothetical? I think that's a closer question than it was in Amsco because if the contractor just didn't install windows, the natural and probable consequences of that, I think, would be that the inside of the building is going to be exposed to the elements when those occur, particularly in a place like this. This house is located in Park City, Utah, where weather is a significant concern. If they just didn't install that, I think that's a direct and natural consequence. Even if it results in damage to other building components, that's not dissimilar to the Utah District Court's H.E. Davis case. That was a case involving a mass excavator performing work for a junior high that was being built in Utah. It turned out that the excavator, when it prepared the building pad, it didn't properly compact the soil. By the time the parties realized that, there were already footings installed in the soil. The excavator had to remove those footings in order to repair its work. The District Court in Utah there held that there was no occurrence because the natural and probable consequence of the excavator failing to properly compact the soil was that it would have to go in and repair and recompact that soil, even if it required moving other construction that had been placed on top of it and the resultant damage that would come from that. I think under your hypothetical, Judge, even if there is some resultant damage from something where it is the natural and probable consequence, it certainly wouldn't constitute an occurrence. Here we have an even clearer case because there is no resultant damage to any other part of the barn, the living quarters in the barn or anything else. The only damage that we have is loss of use because this space is less habitable because it is ... This space is less useful because it's not legally habitable. Now, even if the court finds an occurrence here, there are, of course, the two policy exclusions that apply to bar coverage as well. The first is the own work exclusion and that precludes coverage for damage to your own work arising out of it or any part of it. The H.E. Davis case in Utah also found that that exclusion applied in that case and the same reasoning applies here. Greenhall's work is ... What is at issue here? It's failure to install sprinklers resulted in the damage and the only damage here is loss of use because of the missing sprinkler. How does your argument that it is so clear for purposes of this proceeding in the district court what the scope of work was, how can we reconcile that with the when in doubt defend presumption? Because it seems like there are ambiguities surrounding the scope of the work, but your argument depends on us finding that there are none. Right. Your Honor, I don't think that my argument depends on the court finding that there are no ambiguities. I think that there is enough clarity in the complaint that the ambiguities are not material. We certainly don't know Greenhall's entire scope of work. What we do know is that Greenhall was hired to build these living quarters to conform with code and the allegation is that Greenhall both breached its contract by not doing that and was negligent by not doing that. In this situation, those are the material allegations and those are clear from the complaint. It's that Greenhall had to build the code and it didn't do that and that the only damage resulting from this is loss of use because of the failure to comply with code. To the exclusions, the own work exclusion I think is pretty straightforward. Greenhall of course argues that there's portions of this barn and it's not clear from the complaint what portions of the barn may be or if there are any portions of the barn where that would not be covered by the own work exclusion. To that effect, any such portions of the barn would be covered by the impaired property or property not physically injured exclusion and that exclusion excludes coverage when damage arises from a defect, deficiency, inadequacy or dangerous condition in your work. That would apply to Greenhall's failure to comply with code here or the insurer has delayed or failed to perform a contract. If the property can be restored by a repair, replacement, adjustment or removal of your work or by your fulfilling the terms of the agreement. Now the impaired property that this applies to is property that is not your work, not Greenhall's work and it's made less useful because it either incorporates Greenhall's work which if the barn incorporates Greenhall's living quarters that would apply or because Greenhall has failed to fulfill the terms of the contract. Again the complaint clearly alleges that. It also applies to property that is not physically injured and here there's no allegation of physical injury. Your honors, I'd like to save the the remainder of my time for rebuttal if that's permissible but I'm happy to answer any additional questions. You may counsel, thank you. Thank you. Thank you. May it please the court. Dani Sepernich for Greenhall Planning and Development. Owner's challenge to the district court's decision in this case inverts the applicable standard for this coverage dispute. Owner's argument is essentially that because the allegations of the underlying lawsuit do not conclusively establish that there is coverage or that because those allegations potentially invoke one or more of the policy exclusions that it has no duty to defend. But Utah law is clear that that's not the appropriate standard. It's actually just the opposite. As the insurer, owner's has the burden to show that there are no allegations in the complaint of a potentially covered claim or that one or more of the policy exclusions conclusively apply. And Utah law is clear that if there are any factual questions left open by the pleadings that owner's has a duty to defend up until those factual questions are resolved against the insured. And as the court noted the general statement is when in doubt defend. And here the that are taken both from the Cowley complaint and the Pickens complaint at the very least leave factual questions relevant to both the coverage question at the outset and the applicability of any policy exclusion. What do you say to your opposing counsel's contention that even though we don't really know that there might be some ambiguity surrounding the scope of your clients work that the complaint sets out the material allegations and we not the case. The only allegations regarding the agreement between Greenhall and the Pickens is that it was an oral agreement that involved remodeling the home and then an undefined attached structure. The only allegation about the specific work that was performed comes from paragraph 12 and it's that Greenhall added living quarters to the barn. Mr. Brown had indicated that we know that Greenhall was hired to perform its work up to code but I respectfully from a review of the complaints we don't know that. There are allegations to the contrary including that at the time the Pickens originally applied for their permit with Summit County for construction of the barn which was done by a different general contractor according to the allegations in the Cowley complaint. They left several of the places blank including fire sprinklers and indicated that the barn would not be habited. The allegations of the complaint also indicate that the Pickens is new at the time that they were selling the property to the Cowleys that the barn and the attached so it's described as an attached two-bedroom apartment that both were uninhabitable because they did not have fire sprinklers and that they knew that additional work would be required in order for those structures to be habitable. So there's at least a question about whether the Pickens when they hired Greenhall potentially asked him to only perform part of the work because they anticipated rendering those portion the barn and the attached structure habitable at a later date and that's a factual question that precludes the relief that owner seeks here until it's decided definitively against Greenhall there is that duty to defend. So there are several questions at both the coverage question and then also the exclusions that that preclude owner's relief. Much of the argument about whether there was an occurrence focuses on the notion that Greenhall was hired to and did do work on the entirety of the barn or that the what's described as an attached two-bedroom apartment cannot be separable from the barn but again there are questions about that. The complaints actually indicate that the attached living quarters are separate from the barn they're described as attached not part of and again the only work that the Pickens alleged Greenhall did was to add living quarters to the barn and because of that it is not clear that the loss of use of the remainder of the barn as a habitable structure which again it's not even clear was intended at the time that Greenhall was hired to do this work that that was the probable or natural result of Greenhall's work or that it should have been expected. The court would have to draw inferences and resolve factual disputes about the scope of the contract and the scope of work in order to reach that result. So whether it's just under an application of the standard that discussed in AMCO or AMSCO windows, the court cannot find and the district court properly applied the standard of saying that there is a possibility that there is a covered claimed here. There's a second basis. Can I take you back to the complaint because I think that's that this is kind of what it all comes down to is whether the scope argument when you've got any legs to that basically and of course we don't have anything from the district court's analysis as far as the district court just said to draft something up for me to your client is that correct? The court at the conclusion of the hearing ruled in favor of Greenhall and said based on that correct it said based on what we've argued and what we've done here today or something similar to that. The complaint the Pickensons says that the Pickensons hired Greenhall to remodel the barn and that Greenhall added living quarters to the barn and that its construction work wasn't up to city and county codes and that Greenhall failed to confirm summit county code requirements and perform construction work to that code and the only instance that the complaint identifies of code non-compliance is that the barn lacked sprinklers and therefore was not up to fire code for habitability. I'm not sure how that leaves any fact questions about what Greenhall's obligation was and what he was hired to do and the code question that we have. Yes your honor so the initial question of the agreement is found in paragraph 11 of the complaint and it says that Greenhall was hired to remodel the home and then some inter-lineated things and the accessory structure on the property. It says that it added living quarters to the barn that comes from paragraph 12. The Pickens have alleged that plaintiffs who are the Cowleys in the underlying lawsuit have alleged that the construction work Greenhall performed was not up to city and county codes and it's important to not only consider the Pickens third-party complaint but the Cowley underlying complaint and the circumstances in which this arose. It started as really a failure to disclose case between a purchaser of property the Cowleys and the seller the Pickens because when the Pickens listed the property they identified the quote 2,880 square foot barn with an attached two-bedroom apartment that makes for a convenient place to house guests and then the Cowleys have alleged that the Pickens actually furnished the barn and the apartment to make it look habitable despite the fact that it was not because it did not have fire sprinklers and then you turn to the Pickens third-party complaint which includes claims against the Pickens have acknowledged that they knew the structure was not habitable at the time that they listed the property. They had actually wanted to disclose that and in their view attempted to disclose that to prospective purchasers and had asked the realtor to do that so when you combine those facts and the fact that at the time the Pickens originally applied for the building permit they indicated that it was a barn only and would not be habitable and when the fire department contacted them about the need for sprinklers they responded to the fire department that sprinklers would not be needed because it wasn't going to be habited at that time. There are factual questions that at the very least raised the possibility that Green Hall was not hired to one do any work on the remainder of the barn so if you take off this attached two-bedroom structure that it wasn't hired to do any work on that remainder and that alone is sufficient to have coverage and then two that even if it was hired to do that the Pickenses did not want the building to be brought up to code at that time. Parties regularly probably too often allege breach of contract claims based on obligations that aren't actually found in the contract and here we have an oral agreement without any sort of definitive detailing of what the terms of that oral agreement were. There is a second basis to find that there is an occurrence it's an alternative to what the district court determined and that's the subcontractor exception that's discussed in the Woodside Homes case and briefly in the Fleming case although Utah has not specifically adopted this the district court in the the district court of Utah has predicted that Utah courts would adopt the subcontractor exception and then this court in 2018 in the Black and Veatch case did predict that New York which has a very similar definition of occurrence would likewise adopt the subcontractor exception and noted that 21 states since 2012 have done that and assuming that exception applies here or would be applied in for the project that comes both from the Pickens and the Cowley complaints and then the Pickens have alleged that Greenhall hired various subcontractors to complete the work on the property that's in paragraph 14 and well as Mr. Brown indicated there are factual questions about exactly what work subcontractors did and the scope of that work that those factual questions require a defense from owners until their result against Greenhall. Wasn't the subcontractor exception removed by an endorsement? So the subcontractor exception to the exclusion so the damage to your work exclusion generally has a subcontractor exception to it in the policy and that was removed by an endorsement but it doesn't alter the analysis of whether work by a subcontractor constitutes an occurrence as this court noted in Black and Veatch that exclusion and the exception to it do not establish coverage. They were only discussed as a part of a statutory we'll hear a contract interpretation to avoid surplusage because if if subcontractor work could not constitute an occurrence there would that it would render that exception to the exclusion meaningless and it's important that the standard policy still does include that exception even if it's taken out of the specific policy with Greenhall so it doesn't affect the analysis that the District of Utah engaged in in Woodside Home or that this court engaged in in the Black and Veatch case. So turning to the exceptions the damage to your work exclusion requires the court again to resolve factual questions about the scope of the work that Greenhall actually performed and again the only allegation about the work that Greenhall actually did is that it added living quarters to the barn but there are allegations about loss of use of the remainder of the barn that exceeds the living quarters that were added and so that precludes a determination that the damage to your work exclusion conclusively applies which is what owners must must establish in order to have no duty to defend at this point. The second exclusion is the damage to impaired property or property that's not physically injured and regardless of whether it's the impaired property or property that's not physically injured application of that exclusion requires that the damage either arise out of your work which again focuses on the work that Greenhall actually performed or a delay or failure to perform the terms of an agreement or contract and again there are factual questions at the very least on both of those points that precludes finding that the second exclusion conclusively applies as far as the your work given that we do not conclusively know what work and the scope of work that Greenhall actually performed it's impossible to conclusively determine that any loss of use of the remainder of the barn arose out of that work and similarly with respect to the failure to perform any contract terms without knowing what those terms were it's impossible to conclusively determine that Greenhall did in fact fail to perform the contract terms causing the damage at issue here. I've got one more question for you because I want to refer back to I think what you're saying here is that it was the questions of fact that you say relate to the scope of the agreement all really concerned with the Pickens intended to do right when they hired Greenhall. That's correct. Whether they really wanted Greenhall to put in these sprinklers or comply with the code and yet it's the Pickens complaint that's very specific about what they wanted. They say that Greenhall breached the contract when it failed to adequately design, construct, supervise, inspect the house. It breached the contract when it failed to conform with the requirements of the building code in and for Summit County and complete all construction and remodeling the property in compliance therewith and again we're talking about these building codes. I guess I'm still struggling to see where it is that all we can look at here is the complaint and I don't see how there's any fact issues at all as to what the Pickens thought Greenhall was supposed to be doing. First the only description that we have of the agreement is that one statement that it's an oral contract where Greenhall was hired to remodel the accessory structure in addition to the house. They can see that the breach of the and I mean it just doesn't, I don't see how you can make any other inferences from that. Well your honor, I have a fact question about what they hired Greenhall to do. That they expected Greenhall to make this habitable and comply with the code. The Pickens have alleged that Greenhall breached that contract but as I mentioned before parties routinely allege that there's a breach of a term that's not existent in the contract. Are we just dealing with a motion to dismiss here and looking at the terms? Because this arose in the context of a coverage dispute, it's owner's burden to establish that there are no facts that potentially allege coverage or that an exclusion conclusively applies. And again the Pickens complaint has to be read in context of the Cowley complaint. The Pickens only sued Greenhall because they were sued by the Cowleys. Because they don't know, the Pickens are the ones that have the information about what the scope of the agreement was. So you got to look to their complaint to see what they think the scope of the agreement was and it's pretty clear what they say the breach was. The Cowleys complaint can't add anything to that. The Cowleys complaint does add important historical information about one, the Pickens originally developing the barn and being very clear and explicit that they were not intending for the barn to be habitable at that point. And then also the fact that the Pickens did portray the barn to be habitable at the time of the sale, which in the Pickens complaint they make clear they knew was not the case. And I would suggest that the Pickens complaint may be intentionally vague as to the terms of the contract with Greenhall because it could affect their potential liability to the Cowleys. Well, we can't make that assumption. Well, where there are factual disputes that are left open or factual questions, they're resolved in favor of the insured, not the insurer. So I'd submit that there are several factual questions that preclude the relief that owners saw in the district court and the district court correctly applied that standard in granting judgment for Greenhall. Thank you, counsel. We have some rebuttal time. Could you give them another minute, please? Thank you, your honors. Just going back to the complaint, counsel made the point of saying that we have to demonstrate that there's no facts that could affect coverage. The standard of review is that it's our burden to demonstrate that none of the allegations of the underlying claim are potentially covered. And that's what we're dealing with here is the underlying claim. So whether there's some defense that, hey, our contract with the Pickens didn't say what the Pickens say it says, that's not what we're looking at here. What we're looking at is the allegations of the Pickens complaint. And the allegations of the Pickens complaint are that Greenhall remodeled the housing barn, that it added living quarters to the barn, and that its work was not up to city and county codes because it didn't have fire sprinklers. And then in paragraphs 46, 56, and 65, it breached contractual and torque duties by failing to build its work to code. That's all we have to go off of. What about the other complaint? I mean, don't we have more than one complaint in this case? We have to read them cohesively, I suppose? We certainly do, your honor. But nothing in the Cowley complaint changes the allegations about the terms of Greenhall's contract with the Pickens. The Cowley complaint doesn't even mention any contract between Greenhall and the Pickens. We have to look to the Pickens complaint for that. And what we have is added living quarters to the barn, and it breached its duty to comply with code. To finish, I want to touch on the subcontractor exception as well. Quickly. Judge Timkovich hit on this. This is a different insurance contract than the contract in Woodside that adopted the subcontractor exception. And that's because the exception to the your own work exclusion for subcontractor work is removed from this. So there's no need to harmonize that language with our occurrence analysis in this case. Thank you, your honor. Thank you, counsel. Your excuse in the case is submitted.